UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRIFFIN RODGERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3685** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION: "C" (5)** |

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by the defendant, Allstate Insurance Company ("Allstate") (Rec. Doc. 14). The plaintiff, Griffin Rodgers ("Rodgers") opposes the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that summary judgment is inappropriate.

### II. BACKGROUND

Rodgers owned the property located at 9119 Forshey Street, New Orleans, Louisiana. On September 21, 2002, he obtained a Standard Flood Insurance Policy ("SFIP") through Allstate, a Write-Your-Own ("WYO") insurance provider. The policy was renewed for the 2003-2004 term. However, Allstate claims that it was not renewed

for the 2004-2005 term.

The property was damaged on or about August 29, 2005 as a result of Hurricane Katrina. Then on October 4, 2005, Allstate received a check from Rodgers, which purported to be the payment for the 2003-2004 and 2004-2005 SFIP premiums. Allstate returned or refunded the check to Rodgers because the policy was expired for more than 90 days.

Rodgers brought this suit on July 12, 2006 seeking, among other things, to recover under the SFIP. He claims that he never received any notice from Allstate regarding the expiration of his SFIP. To support his contentions, Rodgers claims that he added $150 per month to his landlord policy premiums as payment for flood insurance. These sums were returned to him as overpayments. He asserts that the policy should be deemed in effect, because he did not receive the required renewal notices from Allstate.

Allstate now moves for summary judgment. It claims that it did send Rodgers not one, but two, notices concerning the renewal and/or cancellation of his SFIP in 2004. Allstate asserts that these notices were automatically generated and sent to Rodgers's residence in Maryland. It argues that under the "mailbox rule," proof of mailing establishes the presumption of receipt that Rodgers cannot rebut without actual evidence that the notices were not mailed in the due course of business or were mishandled by the United States Postal Service ("USPS").

Furthermore, Allstate argues that Rodgers's complaint is untimely because an insured only has one year from the date of the cancellation of a SFIP to complain of the non-receipt of renewal notices. Rodgers, on the other hand, argues that Allstate is not interpreting the applicable deadlines appropriately. He claims that he did timely complain of the alleged non-receipt of the renewal notices.

## II. STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); see also *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." See, *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

### III. ANALYSIS

The National Flood Insurance Program ("NFIP") was established by the National Flood Insurance Act ("NFIA"), 42 U.S.C.§ 4001-4129. It is intended to be a unified national program for providing flood insurance. It is underwritten by the United States Treasury and administered by the Federal Emergency Management Agency ("FEMA"). *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005). Under its regulatory authority, FEMA developed the SFIP and the WYO program, which authorizes private insurance companies to issue SFIPs. Although the private insurance agencies issue the SFIPs, they are acting as fiscal agents of the United States. 42 U.S.C. § 4071(a)(1). As mentioned above, Allstate, is a WYO program carrier authorized to issue and

administer SFIPs under its logo.

Allstate msut adhere to federal regulations in the administration of SFIPs.  One of these regulation sis the sending of renewal notices to the insured and his mortgagee at least 45 days prior the SFIP's expiration.  See, 42 U.S.C. § 4101a(c).  If the insured decides to renew his SFIP, he must follow the guidelines set out in 44 C.F.R. pt. 61, App. A(1)(H), which provides:

> 1. This policy will expire at 12:01 a.m. on the last day of the policy term.
>
> 2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.
>
> 3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:
>
> a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.
>
> b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy.  In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

> 4. In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent application for or renewal of insurance.

As stated above, Rodgers claims that he never received the renewal notices. He has sworn an affidavit to this effect in which he claims that he diligently checks his mail and that he has no record or recollection of ever receiving the renewal notices. See, Rec. Doc. 26, Ex. 2. Rodgers also states that he learned from his insurance agent that the notices were sent to the insured property in New Orleans, Louisiana rather than his residence in Maryland. See, Rec. Doc. 26, Ex. 2.

Allstate, on the other hand, claims that it sent the notices to Rodgers's residence in Maryland.[1] Allstate argues that the affidavits of their representative, John Hintermister, which state that notices were automatically generated and sent to Rodgers's Maryland address, implicate the "mailbox rule." See, Rec. Doc. 14, Ex. A and Rec. Doc. 27, Ex. A. According to Allstate, it has shown that the notices were placed in the mail and that Rodgers can only rebut the presumption of receipt with actual evidence that the notices were not mailed in the due course of business or were mishandled by the USPS.

It is highly unlikely that Rodgers will be able to provide "actual evidence" that

---

[1] Allstate claims that Rodgers's Maryland address was his address of record and that all notices would be sent to the address of record.

6

the notices were not mailed in the due course of business or were mishandled by the USPS. However, his statement that he learned from his insurance agent that the notices were actually mailed to the insured property in New Orleans ,rather than his Maryland residence, raises a genuine issue of material fact as to whether Allstate fulfilled its obligation under 42 U.S.C. § 4101a(c).

However, this genuine issue of material fact is only important if Rodgers timely complained of the non-receipt of the renewal notices. As stated above, 44 C.F.R. pt. 61, App. A(1)(H)(3)(a) requires the insured to complain of the non-receipt of the renewal notices before the due date of the renewal premium "not later than *one year after the date on which the payment of the renewal premium was due*" (emphasis added). The parties disagree as to the date on which the renewal premium was due.

Rodgers argues that his renewal premium was due on October 20, 2004, not the SFIP's expiration date, September 21, 2004. He bases this argument on 44 C.F.R. § 61 Ap. A(1)(H)(2), which states that the payment of the appropriate renewal premium must be received within 30 days of the SFIP's expiration date. Thus, he claims that he had until October 20, 2005 to complain of the non-receipt of the renewal notices. He asserts that he met this deadline. As evidence, Rodgers provides a letter from Allstate dated October 20, 2005, in which Allstate asserts that the renewal notices were properly mailed. Logically, Rodgers must have complained of the non-receipt of the renewal

notices prior to October 20, 2005 for Allstate to have sent this letter.

Allstate, on the other hand, offers a different interpretation of the relevant statutes. Allstate asserts that the one year deadline is marked by the SFIP's expiration date. Allstate argues that since the policy expires at 12:01 a.m. on the last day of the policy term, that the renewal premium is due at this time. It characterizes the 30 day window for payment as a "grace period." In other words, if the payment is late, the SFIP is technically cancelled, but will be reinstated without a lapse in coverage, as long as the premium is received within 30 days of the expiration date. Thus, Allstate contends that Rodgers's renewal premium was due on September 21, 2004 and that he had only until September 21, 2005 to complain of the non-receipt of the renewal notices. Allstate claims that Rodgers did not meet the deadline.

It is well established that the federal statutory and common law governs the interpretation of the SFIP. *Linder and Assocs., Inc. v. Aetna Cas. and Sur. Co.*, 166 F.3d 547, 550 (3rd Cir. 1999) (citations omitted). Thus, "neither the statutory nor decisional law of any particular state is applicable to the case at bar." *Id.* (quoting, *Sodowski v. National Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir. 1987) (quotations omitted)).

Under the federal common law, the SFIP is construed using standard insurance law principals. *Id.* (citations omitted). These principals dictate that the SFIP is to be interpreted according to its plain, unambiguous meaning, keeping in mind that "its

interpretation should be 'uniform throughout the country' and that 'coverage should not vary from state to state.'" *Id.* (quoting, *Nelson v. Becton*, 929 F.2d 1287, 1291 (8th Cir. 1990)). Nevertheless, ambiguities should be construed in favor of the insured and against the insurer. *Id.* (citing, *Aschenbrenner v. United States Fidelity & Guar. Co.*, 292 U.S. 80, 84-85, 54 S.Ct. 590, 78 L.Ed. 1137 (1934)).

  Here, the SFIP is ambiguous. On the one hand, when 44 C.F.R. pt. 61, App. A(1)(H) is read as a whole, it appears that the renewal premium due date referred to in subsection (3)(a) is actually thirty days after the expiration date. Subsection (2) clearly says that the renewal premium must be received within 30 day of the expiration date. There is no mention of termination or a "grace period." Thus, a straight reading of 44 C.F.R. pt. 61, App. A(1)(H) indicates that the renewal premium is due 30 days after the expiration date and it logically follows that the insured has one year from that date to complain of non-receipt of the renewal notices.

  On the other hand, reading 44 C.F.R. pt. 61, App. A(1)(H) together with 42 U.S.C. § 4101a(c) yields a different result. Section 4101a(c) of Title 42 of the United States Code provides that the renewal notices must be sent 45 days prior to the expiration date of the SFIP and then 44 C.F.R. pt. 61, App. A(1)(H)(3)(a) requires the insured to notify the insurer of the non-receipt of the renewal notices within one year of the premium's due date. Since the statute that requires the renewal notices only refers to the expiration

...

date, it makes sense to read premium renewal date as being the expiration date.  This means that the insured would have to complain of the non-receipt of the renewal notices within one year of the expiration date.

As stated above, ambiguities are to be construed in favor of the insured. Reading 44 C.F.R. pt. 61, App. A(1)(H) as a whole does show that the renewal premium is due 30 days after the expiration date and that complaint should be made within one year of that date.  Therefore the Court adopts the interpretation advanced by Rodgers.

The Court's interpretation is bolstered by the SFIP changes of May 6, 1988.  Prior to that date the, the premium had to be received before the SFIP's expiration date, otherwise the policy was cancelled.  See, *Foster v. FEMA*, 984 F.2d 128, 132 (4th Cir. 1003) (citing, 44 C.F.R. Part 61, App. A(1), Art, VIII(G) (1987)).  However, on May 6, 1988 FEMA published amendments to the SFIP that changed this. Importantly, these revisions changed the due date of the renewal premium. See, *Id.* (citing, 53 Fed. Reg. 16,269 (1988)).  Now, the renewal premium must be received within 30 days of the SFIP's expiration date. See, *Id*. (citing, 44 C.F.R. Part 44, App. A(1), at 297 (1992)). Thus, it follows that the extension of the period for paying renewal premiums also extended the time for complaining of the non-receipt of renewal notices.

Rodgers's SFIP expired on September 21, 2004 and his renewal premium was due by October 20, 2004.  It is evident that he complained to Allstate of the alleged non-

receipt of the renewal notices before October 20, 2005.  Thus, he complied with the one year deadline set out in 44 C.F.R. pt. 61, App. A(1)(H)(3)(a) and is permitted to go forward with his claim.

**IV. <u>CONCLUSION</u>**

    For the reasons stated above,

    IT IS ORDERED that Allstate's Motion for Summary Judgment is **DENIED**.

    New Orleans, Louisiana this 29th day of March, 2007.

                                   HELEN G. BERRIGAN
                                   UNITED STATES DISTRICT JUDGE